IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ROBERT WHITE, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:20-CV-1219-RP |
| PATRIOT ERECTORS LLC, | § § § | |
| Defendant. | § | |

## ORDER

Before the Court are several post-trial motions, including Defendant Patriot Erectors LLC's ("Patriot") motion for a new trial or, in the alternative, motion for judgment as a matter of law, (Dkt. 75), Plaintiff Robert White's ("White") motion for an award of front pay damages, (Dkt. 71), and Plaintiff Robert White's motion for attorney's fees and costs, (Dkt. 79). The parties filed responsive briefing for each motion. (Pl.'s Resp JMOL., Dkt. 78; Def.'s Reply JMOL, Dkt. 79; Def.'s Resp. Front Pay, Dkt. 73; Pl.'s Reply Front Pay, Dkt. 74; Def.'s Resp. Atty. Fees, Dkt. 81, Pl.'s Reply, Atty. Fees, Dkt. 82). Having considered the record, the relevant law, and the parties' briefing, the Court will deny Patriot's motion for judgment as a matter of law, grant White's motion for attorney's fees and costs, and order the parties to confer on the motion for front pay.

## I. BACKGROUND

Robert White is a Black male who worked for Patriot, a steel fabrication company in Dripping Springs, Texas, from 2009 to 2019. (Compl., Dkt. 1, at 2). He brought suit for racial discrimination under Title VII of the Civil Rights Act, alleging that he was removed from his job as Production Manager[1] and terminated on account of his race. (*Id.* at 4–5). He also alleged that Patriot retaliated against him for reporting the use of a racial slur at work to human resources. (*Id.* at 2). On

---

[1] The parties appear to use the phrase "Production Manager" interchangeably with "Shop Supervisor."

October 27, 2022, the Court denied Patriot's motion for summary judgment. (R. & R., Dkt. 26; Order, Dkt. 27). It found that White had made a prima facie case of discrimination and Patriot had established nondiscriminatory reasons for his termination, but that White had introduced material disputes of fact regarding whether those reasons were pretextual. (R. & R., Dkt. 26).

From January 17 to January 20, 2023, the case was tried before a jury. (Dkts. 54, 55, 59, 60). Unsurprisingly, the parties offered competing testimony on why White was removed from his job. White alleged that he had worked at the company for a decade with consistently good performance reviews and bonuses. However, after he reported the use of a racial slur at work, he was asked to meet with Patriot's leadership and placed on sabbatical. White emphasized that Patriot had not followed its usual disciplinary policies for his firing and that he had been replaced by a white candidate over several other more experienced minority candidates. Patriot, by contrast, introduced testimony at trial showing that the company placed White on leave because of various nondiscriminatory concerns. Patriot's executives stated that they were worried about the number of hours he had logged, his recent affair with a coworker, complaints about his management style, and recent mistakes in fabrication projects.

The parties also disputed what happened after Patriot placed White on sabbatical. White maintained that his company email was shut down and he had no opportunity to return to the company, much less his former job and pay. Facing, at best, a significant demotion, White instead chose to leave Patriot and start his own fabrication company. Patriot's executives argued that White was offered substantially similar jobs, but that he independently made the decision to leave Patriot.

At the close of trial, Patriot made an oral Rule 50(a) motion, arguing that the evidence was insufficient to support a finding of discrimination. The Court denied the motion without prejudice to re-urging it after jury deliberations. The jury returned a verdict largely in favor of White, finding that he had suffered an adverse employment action from Patriot on account of his race. (Verdict,

Dkt. 68). It awarded White $213,930.00 in lost wages and employment benefits. (*Id.*).[2] Patriot re-urged its Rule 50 motion, and the Court requested written briefing on the matter.

Patriot's motion contains several related arguments. First, Patriot contends that Fifth Circuit precedent requires proof of discriminatory animus. (Mot. JMOL, Dkt. 75, at 2–3). Second, Patriot alleges that there is no evidence of discriminatory motive from any Patriot executives. (*Id.* at 3–4). Third, Patriot argues that White's subjective opinion about why he was moved from his position is legally insufficient to support a finding of discrimination. (*Id.* at 5–7). Fourth, Patriot argues that the termination decision was, at most, arbitrary rather than discriminatory. (*Id.* at 7–9). Finally, Patriot argues that White, not the company, made the decision to leave. (*Id.* at 9).

## II. STANDARD OF REVIEW

### A. Rule 50(b)

"A motion for judgment as a matter of law . . . in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014) (quoting *SMI Owen Steel Co. v. Marsh USA, Inc.*, 520 F.3d 432, 437 (5th Cir. 2008) (per curiam) (citation and internal quotation marks omitted)). Under Rule 50(b) "[a] motion for judgment as a matter of law should be granted if there is no legally sufficient evidentiary basis for a reasonable jury to find for a party." *Id.* (citation and internal quotation marks omitted). At this stage, a court's "review of a jury's verdict is 'especially deferential.'" *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 841 F.3d 669, 675 (5th Cir. 2016) (quoting *SMI Owen Steel Co. v. Marsh U.S.A., Inc.*, 520 F.3d 432, 437 (5th Cir. 2008)). The court "view[s] the entire record in the light most favorable to the non-movant, drawing all factual inferences in favor of the non-moving party, and 'leaving credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts to the jury.'" *Aetna Casualty & Surety Co. v. Pendleton Detectives of Mississippi, Inc.*, 182 F.3d 376, 378 (5th

---

[2] The jury found for Patriot in that White did not suffer retaliation for reporting use of the racial slur.

3

Cir. 1999) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1300 (5th Cir. 1994)). The court may grant a motion for JMOL "[o]nly when the facts and reasonable inferences are such that a reasonable juror could not reach a contrary verdict." *Baltazor v. Holmes*, 162 F.3d 368, 373 (5th Cir. 1998). "If reasonable persons could differ in their interpretation of the evidence, the motion should be denied." *Id.*

### B. Front Pay

Front pay is "a prospective make-whole remedy" that can "at best . . . only be calculated through intelligent guesswork." *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 822 (5th Cir. 1990). Recognizing the "speculative character" of awarding front pay, district courts are "accord[ed] wide latitude" in determining front pay. *Id.* When deciding whether to make a front pay award, courts consider: (1) the length of prior employment, (2) the permanency of the position held, (3) the nature of work, (4) the age and physical condition of the employee, and (5) the possible consolidation of jobs and the myriad other nondiscriminatory factors which could validly affect the possible employment relationship. *Reneau v. Wayne Grifin & Sons, Inc.*, 945 F.2d 869, 871 (5th Cir. 1991). Front pay awards must be "carefully crafted to avoid a windfall to the plaintiff" because damages for employment discrimination are not meant to be punitive. *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 491 (5th Cir. 2007).

### C. Attorneys' Fees

The Civil Rights Act of 1964 provides that a "prevailing party" in a suit brought under Title VII is entitled to recover her attorneys' fees and costs. 42 U.S.C. § 2000e–5(k). The award of attorneys' fees rests within the discretion of the district court. *Id.* The Fifth Circuit has instructed district courts to "use the lodestar method to calculate an appropriate attorney's fee award under the FLSA." *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). This method entails two steps. First, the court calculates a lodestar by "[m]ultiplying the number of hours

4

reasonably spent on the case by an appropriate hourly rate in the community for such work." *Id.* A plaintiff seeking attorney's fees has "the burden of showing the reasonableness of the hours billed" and demonstrating that counsel exercised "billing judgment." *Id.* Second, the court—after calculating the lodestar—"may decrease or enhance the amount based on the relative weights of the twelve factors set forth in *Johnson.*" *Id.* at 800 (citing *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)).

### III. DISCUSSION

### A. Judgment as a Matter of Law

Patriot's motion raises three main arguments as to why the Court should set aside the verdict or order a new trial: (1) White did not show the requisite discriminatory animus or motive, (2) the decision to fire White was, at most, arbitrary, rather than discriminatory, and (3) White chose to separate the company on his own. (Mot. JMOL, Dkt. 75). The Court will address each argument in turn.

#### 1. Discriminatory Animus

Patriot's central argument is that a plaintiff must show "discriminatory animus" in order to prove racial discrimination. Because White's evidence at trial focused on pretextual reasons for his firing, rather than a prejudicial motive, Patriot argues that he failed to meet the requisite elements of a discrimination claim. (Mot. JMOL, Dkt. 75, at 2 (citing *Owens v. Circassia Pharmaceuticals, Inc.*, 33 F.4th 814, 834 (5th Cir. 2022)). In *Owens,* the Fifth Circuit held, "Employers are 'entitled to be unreasonable' in terminating their employees 'so long as [they] do[ ] not act with discriminatory animus.'" *Id.* (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 899 (5th Cir. 2002)).[3] Relying on this quote, Patriot argues that White needs to show animus motivated his termination.

---

[3] Patriot omits the immediately following sentence from *Owens*, "Thus, it is the employee's burden to create a fact dispute as to reasonableness that could give rise to an inference of discrimination." *Id.*

Well-established Supreme Court and Fifth Circuit law, however, states that a showing of pretext is, itself, typically sufficient evidence of animus to prove discrimination. For example, the Fifth Circuit has previously held in *Laxton v. Gap* that, once a plaintiff shows pretext, "No further evidence of discriminatory animus is required because once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation." 333 F.3d 572, 578 (5th Cir. 2003) (citing *Reeves v. Sanderson Plumbing Prod. Inc.*, 530 U.S. 133, 147–48 (2000)). In other words, the showing of pretext alone may often be enough evidence of animus to find racial discrimination. *Id.* Moreover, "direct evidence" of discriminatory intent "is rare in discrimination cases" and plaintiffs typically rely on inferences of discrimination instead, including a showing of pretext. *Rutherford v. Harris Cnty., Tex.*, 197 F.3d 173, 180 (5th Cir. 1999). And the Supreme Court has held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employee was unlawfully terminated." *Reeves*, 530 U.S. at 148.

Here, White met the standard to show racial discrimination. To establish a prima facie case, a plaintiff must show:

> [H]e (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group. With respect to the "similarly situated employees" requirement, a plaintiff must show that [he] was treated less favorably than others under nearly identical circumstances.

*Morris v. Town of Indep.*, 827 F.3d 396, 401–02 (5th Cir. 2016). White met this burden, showing that he was a qualified member of the protected group who suffered an adverse employment action and was replaced by someone outside the protected group. After establishing a prima facie case, White showed that Patriot's asserted justification was plausibly false, detailing his job performance at length in trial. Under the straightforward analysis in *Reeves*, White showed

6

sufficient evidence to permit the jury to conclude that he was unlawfully terminated. Finally, while the Fifth Circuit has established two exceptions where a showing of pretext is insufficient to establish discrimination, neither applies here.

> The two "rare" instances in which a showing of pretext is insufficient to establish discrimination are (1) when the record conclusively reveals some other, nondiscriminatory reason for the employer's decision, or (2) when the plaintiff creates only a weak issue of fact as to whether the employer's reason was untrue, and there was abundant and uncontroverted evidence that no discrimination occurred.

*Laxton*, 333 F.3d at 578 (citing *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 223 (5th Cir. 2000)). Patriot did not show a clear and uncontested nondiscriminatory reason for its decision. Nor was the evidence surrounding pretext weak or vastly outweighed by contradictory evidence. Because neither "rare instance" applies, White's evidence on pretext was sufficient to support the jury's finding of discrimination.

Likewise, while *Reeves* suggests certain "instances where, although the plaintiff has established a prima facie case and introduced sufficient evidence to reject the employer's explanation, no rational factfinder could conclude that discrimination had occurred," Patriot does not argue that this case is one of those instances. *Reeves*, 530 U.S. at 148. Relying on *Owens*, Patriot suggests that a further showing of animus is necessary, but disregards that *Owens* explicitly dealt with a case where pretext itself was not rationally suggestive of discrimination. *Owens*, 33 F.4th at 826 ("As we explain below, this is one of those instances."). Because White's evidence of pretext was extensive and suggestive of discrimination,[4] he does not fall under the exception to *Reeves*. Therefore, his showing of pretext, combined with his prima facie case, was legally sufficient for a jury to find discrimination.[5]

---

[4] *See infra*, Section III.A.2.
[5] The jury charge, taken from the Pattern Fifth Circuit reflected the well-established framework for evidence of discrimination. As the charge stated, "If you find that the reason Defendant Patriot Erectors has given for its actions, is unworthy of belief, you may but are not required to, infer that Defendant Patriot Erectors was

2. Weight of the Evidence on Animus

Beyond the legal framework, White's introduced adequate evidence on pretext and discriminatory animus. As to pretext, the Fifth Circuit examines whether evidence is "'of a sufficient nature, extent, and quality' to permit a jury to find discrimination." *Owens*, 33 F.4th at 826 (quoting *Crawford v. Formosa Plastics Corp. Louisiana*, 234 F.3d 899, 902–03 (5th Cir. 2000)). While a reasonable jury could have found either way, there was sufficient evidence to support the jury's ultimate verdict.[6] Much of Patriot's argument appears to be that White's evidence was circumstantial—leading to an inference of discrimination rather than direct proof. But the nature of White's circumstantial evidence is of no weight—it was for the jury to decide whether that circumstantial evidence was sufficient to make discrimination more likely than not. The Court may not overturn the jury's verdict solely because the evidence required the jury to draw inferences.

As this Court found at summary judgment, which largely matched the evidence presented at trial, several discrepancies in Patriot's testimony supported a finding of pretext. Swor, a Vice President at Patriot, testified that Patriot would typically give ongoing feedback with employees, and that the company would provide written writeups before termination. However, White showed at trial that his alleged poor performance had never been discussed with him prior to being placed on leave. And while Swor testified that the company had a written disciplinary policy, this was contradicted by his deposition testimony earlier in the case. (*See* R. &. R., Dkt. 26, at 18). Although Patriot claimed that White had poor performance, it had consistently given him bonuses totaling $50,000 in the preceding quarters. Having heard this evidence, it was reasonable for the jury to

---

motivated by Plaintiff White's race." (Jury Charge, Dkt. 63, at 5; Fifth Circuit Pattern Jury Charge 11.1). Patriot did not object to this inclusion, nor the omission of a requirement of animus.

[6] The Court noted at the close of White's case, "This is an extraordinarily close case" that the jury could find either way. But whether the totality of the evidence tips in one direction or the other is a question for the jury, and does not affect the sufficiency of White's case as a matter of law.

8

conclude that the given reason for White's suspension was pretextual and that the true reason was discriminatory in nature.

Beyond the discrepancies in White's termination, there was circumstantial evidence which suggested discriminatory animus. Most notably, White introduced evidence showing that after he was fired, Patriot passed over three more experienced, earlier hires, all of whom were also racial minorities. Indeed, White highlighted at trial that there was not a serious competitive process for his replacement, leading to the reasonable inference from the jury that Patriot had chosen the less-qualified applicant because of his race.[7] And while Patriot offered conflicting testimony on this point, arguing that the new replacement was selected for other reasons, it was reasonable for the jury to consider it evidence of Patriot's discriminatory behavior. Finally, the jury heard evidence that Patriot's workplace in Dripping Springs had seen a precipitous decline in the number of Black employees—falling from ten employees at the time White left to just one Black employee today.

In short, White presented ample evidence that suggested a discriminatory motive in his firing. Patriot contends that he has not shown "animus" per the Fifth Circuit's recent holding in *Owens*, 33 F.4th at 834. But the Court in *Owens* only required a showing of animus after it found that the plaintiff's evidence on pretext was not of sufficient "nature, extent, and quality" to infer discrimination. *Owens*, 33 F.4th at 826 (quoting *Crawford v. Formosa Plastics Corp. Louisiana*, 234 F.3d at 902–03. That is simply not the case here, where the evidence of pretext was strongly suggestive of discrimination. Even if White did have to show animus in addition to pretext, he met that burden. The decline in Black employees, the lack of vetting for his replacement, and the alleged use of a racial slur were all pieces of circumstantial evidence of a discriminatory action.

---

[7] While the replacement was Hispanic, Swor testified that he did not know about his Hispanic background at the time of hiring.

9

While this evidence was indirect, it plausibly showed that White had been suspended on account of his race. White only needed to show enough evidence that a reasonable jury could come to the conclusion that discrimination was more likely than not. "Title VII discrimination can be established through either direct or circumstantial evidence" and courts should not "unduly restrict a plaintiff's circumstantial case of discrimination." *Laxton*, 333 F.3d at 585. By introducing substantial evidence of pretext, combined with circumstantial evidence of a discriminatory suspension, White more than met his burden. The notion that "animus" requires direct, unequivocal evidence of racial prejudice is simply not supported by Title VII precedent, and the Court may not substitute the jury's consideration of the circumstantial evidence for its own.

### 3. Arbitrary vs. Discriminatory Motive

Patriot next moves for JMOL on the grounds that the company's decision-making was, at most, arbitrary, rather than discriminatory. (Mot. JMOL, Dkt. 75, at 5–9). In support, Patriot raises three arguments: (1) that the firing was not in bad faith, (2) that White's subjective beliefs are insufficient as evidence, and (3) that failure to follow procedures is also insufficient. (*Id.*).

Patriot's first argument on bad faith is largely the same as its discussion of pretext. If a decision was pretextual, then that supports a finding that it was in bad faith. Relying on a recent Eastern District of Louisiana case, Patriot argues that a finding of pretext must include evidence showing bad faith. (*Id.* at 6–7 (citing *Cooper v. Cornerstone Chem. Co.*, CV 20-1454, 2022 WL 19354 (E.D. La. Jan. 3, 2022), *aff'd* No. 22-30312, 2023 WL 2447447 (5th Cir. Mar. 10, 2023)).[8] But Patriot offers no support for the notion that "bad faith" is different from "pretext," and the cases cited by Patriot consider the two together, using the exact phrase "bad faith pretext." *See id.*; *Waggoner v. City of Garland*, 987 F.2d 1160, 1166 (5th Cir. 1993).

---

[8] The cases cited by Patriot that use "bad faith" deal with the ADEA, not racial discrimination. *See Cooper*, 2022 WL 19354. Indeed, "bad faith" is more fitting in the ADEA context, where employers may fabricate a legally permissible motive to disguise an age-based firing. Patriot does not introduce caselaw showing that a plaintiff must show "bad faith" in the race discrimination context.

Moreover, as White points out in his response, the evidence at trial did suggest the reasons given for his termination were unworthy of credence. Patriot stated that it terminated White because he (1) improperly cut projects; (2) did not meet production targets; (3) shipped products lacking proper portions of the order; (4) improperly tracked inventory, resulting in material designated for one project being used for another; (5) resisted implementation of new TEKLA software, (6) instilled "job fear" in employees. (Pl.'s Resp., Dkt. 78, at 9). Yet for each of these reasons, White introduced countervailing evidence showing that Patriot's stated justifications were unsupported. White showed that products were frequently improperly cut, which had been ongoing well before his termination and was largely out of his own control. He showed that the shop had met its production targets, and that his department was not responsible for incorrect shipping. He showed that inventory was tracked through Patriot's internal system, and that occasional slippage between departments was an inherent part of operations at the company. He showed that he could use the TEKLA software at his new job, but that Patriot's rollout of the software had encountered several issues company-wide. And the duplication of job efforts was shown to be a result of miscommunication beyond White's own control or responsibility. In short, there was a genuine dispute about whether Patriot's stated reasons for its firing were made in good faith, and it was reasonable for the jury to find that the reasons were pretextual.

Next, Patriot argues that White's beliefs about the cause of his firing are insufficient to support a finding of discrimination simply because Patriot used subjective evaluations. (Mot. JMOL, Dkt. 75, at 5–6). As Patriot argues, "Employers are entitled to be unreasonable in terminating their employees so long as they do not act with discriminatory animus." *Owens*, 33 F.4th at 826 (cleaned up). This argument effectively repeats Patriot's earlier contention: that White's evidence may only show pretext, and not a discriminatory motive. Again, White's evidence of pretext was sufficient, and even if it were not, White still did introduce evidence reasonably suggesting discriminatory

11

behavior. The report of a racial slur at work, the exodus of Black employees from the company at the time of his firing, the abnormal procedures for his suspension, and the promotion of a new employee over experienced minority candidates all suggest a pattern of discrimination that made it reasonable for a jury to find racial animus. Because White's evidence goes beyond the subjective reasons beyond his demotion, his evidence was sufficient to support a finding of discrimination.

Finally, Patriot contends that the company's failure to follow its internal procedures for demotion is legally insufficient to show discrimination. (Mot. JMOL, Dkt. 75, at 7–8 (citing *Turner v. Baylor Richardson Med. Cntr.*, 476 F.3d 337, 346 (5th Cir. 2007); *Linehan v. Univ. of Texas at Tyler*, No. 6:16-CV-00066-RWS, 2018 WL 703246 (E.D. Tex. Feb. 5, 2018))). Patriot quotes *Linehan*: "[A]lthough policies were not followed, a defendant's failure to follow its own policy is not probative of discriminatory animus in absence of proof that the plaintiff was treated differently than other employees . . . ." *Linehan*, 2018 WL 703246, at *2 (cleaned up) (citing *Turner*, 476 F.3d at 356. Unlike in *Linehan*, White did prove that he was treated differently than other employees. He showed that the company typically followed its own internal procedures for demotions and terminations but did not for his suspension. Because the company followed these procedures for most disciplinary proceedings but not for White, its failure to do so was circumstantial evidence of a discriminatory motive. And as this Court held at summary judgment, the failure to follow formal, documented disciplinary procedures could be circumstantial evidence of pretext. (R. & R., Dkt. 26, at 18 (citing *Burton v. Freescale Semiconductor*, 798 F.3d 222, 239–40 (5th Cir. 2015)). Overall, Patriot's failure to follow its established disciplinary procedures was proper evidence for the jury to consider as part of its finding of discrimination.

### 4. White Chose to Leave

Finally, Patriot contends that White cannot have suffered an adverse employment action because he voluntarily chose to leave Patriot to start his own company. (Mot. JMOL, Dkt. 75, at 9–

12).  Here, the parties admit that White was removed from his role as Shop Supervisor and forced to take a six-week sabbatical, but they dispute whether he was offered alternative work. (*Id.*; Pl.'s Resp., Dkt. 78, at 12). Regardless of the alternative work, it is well established that a change in job duties can constitute an adverse employment action if the changes are objectively worse.[9] *See Alvarado v. Tex. Rangers*, 492 F.3d 605, 613–15 (5th Cir. 2007); *Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996). Here, there is little dispute that the alternative work allegedly offered to White would have been worse, with lower pay and a reduction in job responsibilities. (*See* R. & R., Dkt. 26, at 8). The fact that White left Patriot to found his own company does not change the initial adverse action. That White chose to mitigate his damages by leaving the company rather than accepting the inferior positions allegedly offered to him has no effect on the finding of discrimination, which began when he was involuntarily placed on sabbatical. The jury found that White suffered an adverse employment action, (Verdict, Dkt. 68, at 1), and this was well-within the purview of a reasonable jury.

In sum, White's evidence at trial established a prima facie case of discrimination, and his evidence of pretext was enough for a reasonable jury to infer animus. Even if it was not, White still introduced evidence of a discriminatory motive. Finally, even if White left the company, it was reasonable for the jury to find that he suffered an adverse employment action. Therefore, the Court will deny Patriot's motion for judgment as a matter of law.

### B. Motion for Front Pay

Next, the Court turns to White's motion for front pay. (Dkt. 71). In his motion, White requests five years of front pay at his 2019 salary, for a total of $921.753.60. (*Id.* at 3). Patriot

---

[9] Patriot suggests that the choice to move White within the company was its "prerogative," but this has no bearing on whether the action was adverse.

contests the motion on several grounds, arguing that front pay would be a windfall, unsupported by evidence, speculative, and duplicative of his current salary.

Before it can address Patriot's arguments against front pay, the Court must first note that the threshold question of reinstatement is unresolved by the parties' briefing. *See Walther v. Lone Star Gas Co.*, 192 F.2d 119, 127 (5th Cir. 1992) ("Front pay will not be awarded unless the plaintiff shows that reinstatement is not feasible."). In its response in opposition to the motion, Patriot suggests that front pay is not warranted because "Patriot sought to retain Plaintiff by offering him the option of an alternative job, at the same pay level," and that there is no "evidence that reinstatement was impossible . . . ." (Def.'s Resp., Dkt. 73, at 11). In a sworn declaration to his reply, White states, "If reinstatement into the Production Manager position at Patriot was available or offered to me, I would accept the opportunity." (White Decl., Dkt. 74-1, at 1).[10] Based on the briefing alone, neither party appears to definitively oppose reinstatement.

Given the parties' positions, the Court will order the parties to meaningfully confer and negotiate the possibility of White returning to Patriot as a Production Manager or an equivalent position with the same pay. The parties shall file notices regarding the outcome of their conference and reinstatement or file a request for an extension of time within 60 days of the date of this order.

### C. Attorney's Fees

Finally, the Court turns to White's motion for attorney's fees and costs. Patriot contests White's use of an expert witness, Robert Schmidt, on attorney's fees because he was not timely disclosed. (Def.'s Resp., Dkt. 81, at 1). But courts regularly treat the designation of expert witnesses on attorney's fees differently from experts on the merits of the case. *See Eure v. Sage Corp.*, No. 5:12-CV-1119-DAE, 2014 WL 1092086, at *4 (W.D. Tex. Mar. 18, 2014); *Straus v. DVC Worldwide, Inc.*,

---

[10] Counseling against reinstatement, the position of Production Manager appears to have been filled (as was part of White's evidence at trial). *See, e.g.*, *McCann v. Litton Sys., Inc., Ingalls Shipbuilding Div.*, 767 F. Supp. 127, 130 (S.D. Miss. 1991) (noting that reinstatement might be disfavored when it "would necessitate the bumping of an innocent incumbent employee").

484 F. Supp. 2d 620, 633 (S.D. Tex. 2007) (denying a motion to strike the defendants' experts on attorneys' fees for late designation because "[a]ttorneys' fee claims are generally resolved at the close of the case, after both liability and damages have been determined" so the defendants' delay did not prejudice the plaintiff). Further, courts have denied a finding of prejudice on the basis that "[a]ttorneys who represent parties against whom such fees are sought are not surprised by expert testimony because they can usually expect that opposing counsel will attempt to prove his attorney's fees and because they are themselves experts on the subject." *Wright v. Blythe-Nelson*, No. CIVA399CV2522D, 2001 WL 804529, at *6 (N.D. Tex. July 10, 2001). As the *Wright* court held, the prejudice to late designation of expert witnesses on attorney's fees can be addressed via a continuance, allowing the opposing party to designate their own expert witness. *Id.* And the prejudice, if any, to Patriot would be minimal, as the expert's opinion is essentially restricted to the sole question of whether his counsel's hourly billing rate is reasonable.

On the merits, Patriot does not contest the number of hours bills, but focuses its opposition the proposed billing rate. White's counsel, who took the case on a contingency basis, suggests an hourly rate of $575 per hour, and $125 per hour for his paralegal, while Patriot argues that a proper rate would be around $475 and $100 per hour, respectively. (Mot. Atty. Fees, Dkt. 79, at 6; Def.'s Resp., Dkt. 81, at 3–4). Using the *Johnson* lodestar method, the Court finds that an hourly rate of $575 per hour is reasonable after considering all relevant factors. First, the time and labor involved was extensive. While the case was a relatively standard employment discrimination dispute, the evidence of discrimination was not immediately apparent. To succeed, White's case required a high degree of skill by showing, for example, that Patriot's executives had offered conflicting testimony about their disciplinary procedures. White's counsel is an experienced litigator and seasoned trial lawyer. While White did not win on the retaliation claim, he did succeed on the core claim of racial discrimination. *See Northwinds Abatement, Inc. v. Employers Ins. of Wausau*, 258 F.3d 345, 354 (5th Cir.

2001) (noting that the "degree of success obtained" by a prevailing plaintiff is the "most critical factor" in determining an award of attorney's fees). As the Supreme Court has noted,

> Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised. But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

*Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). Here, while White did not succeed on his retaliation claim, the alleged use of the racial slur at Patriot was still relevant to his successful claim for discrimination. White's pleading retaliation as an alternative does not detract from his ultimate success. Patriot further suggests that White should have billed lower rates for less complex work, but Patriot offers no caselaw support for this notion (Def.'s Resp., Dkt. 81, at 4–5). As a solo practitioner, White's counsel may not assign less complex work to a lower-billing attorney. Similarly, the Court finds that $125 is reasonable for an experienced paralegal.

Overall, White has shown that his proposed fees are reasonable. The rate is within the standard range for a lawyer of White's counsel's experience and specialty. *See, e.g.*, *Johnson v. Southwest Research Institute*, No. 5:15-cv-297 (W.D. Tex. filed Ap. 17, 2015) (Dkt. 176 at 14–17) (awarding counsel with similar experience the requested fee of $585 per hour). Even if it were on the slightly higher end of the standard range, it would be bolstered by the *Johnson* factors and White's ultimate success at trial. Therefore, the Court will award White his full award of $218,180.60 and post-judgment interest of $2,059.62.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Patriot's motion for judgment as a matter of law, (Dkt. 75), is **DENIED**.

**IT IS FURTHER ORDERED** that White's motion for attorney's fees, (Dkt. 79), is **GRANTED**. White is awarded $218,180.60 and post-judgment interest of $2,059.62.

16

**IT IS FINALLY ORDERED** that White's motion for front pay, (Dkt. 71), is **ABATED** pending the parties' discussion of reinstatement. As stated *supra* Section III.B, the parties shall meaningfully confer on whether reinstatement to White's former job (or a similar position with equivalent or higher pay) is feasible. The parties shall file a notice regarding the outcome of their discussions on or before **July 12, 2023**.

**SIGNED** on May 11, 2023.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE